UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                                PLAINTIFF

v.                                                                        CRIMINAL ACTION NO. 3:16-CR-93-DJH
                                                                                              ELECTRONICALLY FILED

YALEXI RUIZ                                                                                             DEFENDANT

## RESPONSE TO MOTION TO SUPPRESS EVIDENCE

Yalexi Ruiz ("Ruiz") has moved the court to suppress evidence seized during the execution of a search warrant at 5405 Minyard Drive, Louisville, Kentucky on August 4, 2016. (DN 40, Motion to Suppress, 1). In support of his motion, Ruiz makes two primary claims: First, Ruiz argues that the affidavit failed to state probable cause and second, Ruiz claims the search exceeded the scope of the warrant. (*Id.* at 2). Ruiz's motion should be denied because the affidavit supporting the warrant clearly provides a sufficient and timely basis for probable cause and agents did not exceed the scope of the warrant because they contained their search to the curtilage of the home.

## BACKGROUND

On August 4, 2016, U.S. Drug Enforcement Administration (DEA) agents and Louisville Metro Police Department (LMPD) officers took part in a narcotics investigation focused on Ruiz. That day, agents directed and monitored a controlled transaction during which a LMPD cooperating source (CS) gave Ruiz $43,000 cash as payment for a previous drug debt. Following the transaction, officers pulled over Ruiz's vehicle and located approximately 4

kilograms of suspected methamphetamine inside. Detective Daniel Evans then obtained a state search warrant authorizing a search at 5405 Minyard Drive in Louisville.

Detective Evans submitted a sworn affidavit to Judge Anne Haynie on August 4, 2016 at 1:52 p.m. setting forth the basis for the search. The Search Warrant and Affidavit are attached hereto as "Exhibit A." In sum, Detective Evans swore to the following:

- Detective Evans has 10 years' police experience.

- On August 3, 2016, the LMPD and DEA recovered a large amount of crystal methamphetamine from an individual who stated that Yalexi Ruiz provided the drugs and that he/she owed Ruiz $43,000.

- On August 4, 2016, the cooperating defendant met with Ruiz at a Sam's Club to pay back the $43,000.

- Officers conducted surveillance of the transaction and observed Ruiz after he left.

- While Ruiz was leaving, he told the cooperating defendant that Ruiz would have 4 kilograms of methamphetamine available later that day.

- Officers conducted continued surveillance of Ruiz and followed him to 5405 Minyard Drive, Louisville, an address known to detectives as a stash location for narcotics.

- At approximately 10:20 p.m., Ruiz told the cooperating defendant that he was at the location where the drugs were located. Surveillance officers saw Ruiz at 5405 Minyard at that time.

- Roughly 20 minutes later, police stopped Ruiz's vehicle after he left 5405 Minyard and found approximately 4 kilograms of crystal methamphetamine.

- Detective Evans believed that Ruiz was using 5405 Minyard Drive to store narcotics.

2

Officers executed the warrant at the residence and searched a shed in the backyard. They found approximately three kilograms of methamphetamine in a toolbox inside the shed. Ruiz now seeks suppression of the evidence found in the shed.

## ARGUMENT

Ruiz broadly attacks the sufficiency of the warrant in this case without citing any supporting case law. In doing so, he seeks to hold the affidavit to an unreasonable standard. For example, Ruiz states that the affidavit "failed to include any date for the 'prior search warrant' at the location or 'informant information.'" (Motion, 2) An affidavit must be "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000). While reviewing courts should avoid "rubber stamping" an earlier decision, "great deference" should be given to a "magistrate's determination of probable cause." *United States v. Abboud*, 438 F.3d at 571 (6th Cir. 2006) (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)(quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969))). Courts should "avoid engaging in a hyper-technical, line-by-line critique of an affidavit." *United States v. Lawson*, 2006 WL 1538889 at 8 (6th Cir. June 5, 2006)(citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Application of the proper standards to Detective Evans' affidavit shows ample probable cause to search the residence.

### Probable Cause

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.... [N]o warrants shall issue, **but upon probable cause**, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis

3

added).  A law enforcement official seeking issuance of a search warrant must first establish that probable cause exists to justify the warrant.  "In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams,* 224 F.3d 530, 532 (6th Cir.2000) (quoting *Gates,* 462 U.S. at 238 (1983)).

    1. <u>Informant Information</u>

Part of the information contained in the affidavit is attributed to an unnamed person. Detective Evans stated that on August 3, 2016, law enforcement officers seized a large amount of crystal methamphetamine and learned from the target of that investigation that Yalexi Ruiz was owed $43,000 as payment by August 4, 2016.  The target is not named in the affidavit. Detective Evans further stated that detectives and agents used a "cooperating defendant" to pay back Ruiz on August 4, 2016.  Based on a common sense reading of the affidavit, it can be presumed that the "cooperating defendant" was the same person from whom agents had seized the methamphetamine on August 3.  Agents then personally observed Ruiz driving a silver pickup truck as he met with the cooperating defendant to receive payment.  The same person also relayed that Ruiz stated he was present at the location where he kept his drugs at the same time police observed Ruiz at 5405 Minyard Drive.  Thus, a person known to police provided them with specific information showing that 1) Ruiz was a drug dealer; 2) he expected payment of $43,000 for an outstanding drug debt; and 3) that Ruiz had stored at least 4 kilograms of methamphetamine at 5405 Minyard Drive on August 4, 2016.   It is also clear that the informant had a sufficient basis of knowledge to provide reliable information about narcotics.  Police had

seized a significant amount of methamphetamine the day before and the informant had personally dealt with Ruiz.

In evaluating whether informant information is sufficient for a finding of probable cause, courts make a distinction between anonymous tipsters and known informants. Information from a known informant should be given greater weight than an anonymous tip because the known person's reputation can be assessed and he or she can be held responsible if the allegations turn out to be fabricated *Florida v. J.L.*, 529 U.S. 266, 270 (2000). Clearly, police were dealing with an actual person who could be held to answer for false information. Indeed, Detective Evans characterized the individual as a "cooperating defendant" implying that the person faced criminal consequences for his or her possession of narcotics.

2. Independent Corroboration

But probable cause in this case is not based on informant information alone. The affidavit sets forth other facts which corroborate the essence of the informant's information, i.e. that evidence of a crime would likely be found at 5405 Minyard Drive. Police did not simply rely on what the informant told them and run to a judge for a warrant. Officers undertook their own independent efforts to corroborate the information. The Supreme Court has long recognized the value of corroboration of details of an informant's tip by independent police work. *Gates*, 462 U.S. at 241. Here, police conducted a controlled transaction in which they personally observed the informant pay Ruiz $43,000 for "consigned" drugs. Not only do these efforts corroborate the informant's information, but they also provide a track record of reliability, albeit a short one. Thus the subsequent statement attributed to the informant that Ruiz was located at the place where he had drugs takes on greater weight. The police had already tested the informant by monitoring a controlled transaction with Ruiz.

Law enforcement officers independently furthered the probable cause effort in this case when they stopped Ruiz's pickup truck after he left 5405 Minyard Drive. A police K-9 indicated the presence of narcotics in the vehicle and police found approximately four kilograms inside. According to the informant, Ruiz stated he had four kilograms to sell at the very moment police observed Ruiz at Minyard Drive. Therefore, it was reasonable for the state judge to conclude that evidence of drug trafficking would likely be present at the residence. *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008), citing *United States v. Hodge*, 246 F.3d 301, 305-06 (3d Cir.2001) (noting that a court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense").

<u>Good Faith</u>

As outlined above, the United States maintains that the warrant in question was valid. However, should the court determine that there was a constitutional violation, the search should nonetheless be upheld under the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984). Clearly, the warrant is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (citing *United States v. Bynum*, 293 F.3d 192, 105 (4th Cir. 2002). In other words, any reasonably well-trained officer faced with executing this warrant would objectively rely in good faith on the issuance of the warrant.

<u>Scope-Curtilage</u>

Again without citing any case law, Ruiz argues that "officers searched and seized evidence outside the scope of the warrant." Ruiz takes issue with the search of a shed located in the backyard of the residence at 5405 Minyard Drive. The following satellite image is included to assist the court in determining this question:



https://www.google.com/maps/place/5405+Minyard+Dr,+Louisville,+KY+40219/@38.1432858,-85.6965945,62m/data=!3m1!1e3!4m5!3m4!1s0x88690ea5338a68a3:0xd7f96d398fe2e9d0!8m2!3d38.1432813!4d-85.6964916  (last visited 11/17/2016).

The shed in question is located at the top right corner of the property[1].

---

[1] At the time of the search on August 3, 2016, the above-ground pool visible in the picture was not present.

7

In general, "a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage." *United States v. Watkins*, 179 F.3d 489, 505 (6th Cir.1999). Thus, the question in this case is whether the shed falls within the curtilage of the property. In *United States v. Dunn*, the Supreme Court identified the following four factors that courts must consider in determining whether or not a structure falls within the curtilage of the home:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U.S. 294, 300–01 (1987).

In *United States v. Biles*, 100 Fed.Appx. 484 (6th Cir. 2004) the Sixth Circuit applied the *Dunn* factors to facts similar to this case. The police in *Biles* had obtained a warrant to search a residence after they had stopped Biles and found evidence of methamphetamine production in his vehicle. They obtained a warrant to search Biles' residence for evidence of methamphetamine. During the search, officers searched a shop building located on the property. The court upheld the search noting that the shop was approximately 150 feet behind the house and enclosed, at least partially, by a fence. *Id*. at 492. The court further stated that Biles had used it as a hobby shop and occasional residence and had made no efforts to conceal it. *Id*. To further assist the court, the following street-view image is included:



https://www.google.com/maps/@38.1434501,-85.6967916,3a,15y,100.95h,88.35t/data=!3m6!1e1!3m4!1svWFQlN9Ys8xPDzlmGIrz4w!2e0!7i13312!8i6656!6m1!1e1 (Last visited 11/17/2016).

Here, as can be seen in the attached photographs, the shed is located in very close proximity to the house and is clearly located within the confines of a fence. It is much closer to the house than the shop involved in *Biles*. It appears to be situated so as to serve as an extension of the home itself providing storage to the resident. There clearly are no efforts to conceal its presence. Nor could there be. The house is located in a residential neighborhood and there are two houses adjacent to the property, one on each side. In fact, Detective Evans was obviously aware of its presence when he prepared the search warrant application because the shed is referenced in the description of the property.

Need for an Evidentiary Hearing

Inasmuch as Ruiz seeks suppression based on the adequacy of the search warrant, no hearing is necessary.  When reviewing probable cause, courts "may only look within the four corners of the affidavit."  *Abboud*, 438 F.3d at 571 (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).  Therefore, no evidentiary hearing is necessary to determine whether the warrant contains sufficient probable cause.  The affidavit contains all the information the court may consider regarding the sufficiency of the warrant.

Ruiz also attacks the scope of the search.  The United States has included two photographs to assist the court in this question.  Based on conversations with the agents and officers involved in the search, it is believed that the photographs depict the property as it appeared on August 4, 2016.  However, if additional evidence is required, the United States requests the hearing be limited in its scope to matters relevant to the issues raised.

## **CONCLULSION**

For the reasons stated above, the motion to suppress should be denied.

Respectfully submitted,

JOHN E. KUHN, JR.
United States Attorney

 s/Robert B. Bonar
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky  40202
Email:  robert.bonar@usdoj.gov

10

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 18, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following: Patrick J. Renn, counsel for Yalexi Ruiz.

                                                        s/Robert B. Bonar
                                                        Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY